May it please the court. I'm Megan Hayes. I represent Roy Mestas. He is an Hispanic employee who was injured while working at the Town of Evansville. He took medical leave to recover from his injury and when he returned from work, he was harassed and retaliated against by his supervisor, Dale Brown. Just a few background facts. Mr. Mestas was a probationary employee for the Town of Evansville. They had an employee handbook with a general grievance policy that was not available to probationary employees. He slipped on the ice at work and injured his back. He informed his supervisor so his supervisor knew he was injured. He gave the Town of Evansville a note from his doctor that he was unable to work until further notice. Under this court's cases, that note and his discussion with his employer about potentially doing light duty work at the Town Hall was sufficient to trigger the Town's him alternative work or reasonably accommodating his injury, which it did by putting him on unpaid medical leave for approximately six weeks. As a probationary employee, he was not eligible for leave under FMLA, so the only alternative for unpaid leave was under the ADA. The Town held his job open for him. It could have fired him. Instead, they allowed him that leave and held his job open for him so that when he came back to work in January, in mid-January, he resumed his duties. He was able to perform his job duties without any further accommodation. But at that point of returning to work after his leave, he was immediately confronted by his supervisor and threatened with losing his job if he didn't sign this document indicating that he was willing to extend his probation. And from that point on, really- That was totally in compliance with the rules governing probation, right? Probation period was supposed to be six months of work. So that document seems to have been really unnecessary. It was totally required by the rules regarding probationary employees anyway, wasn't it? Well, I think it was, if you look at the employee manual, I think it was discretionary with the supervisor whether that probationary period had to be extended. So the supervisor didn't need his signature on that? No. It was more a notice telling him that I'm exercising my discretion to extend the probation period? Yes. And notice, or as my client interpreted, a threat that if you don't sign this, I'm going to fire you. Sure, he could have done it without that. But even assuming that he could, or he could extend it. You know, I accept that he could extend it. But it was the behavior from that point forward that was retaliatory and created a hostile work environment, certainly under the Title VII claim for race discrimination. But he was, I think the supervisor told a co-employee, Ron Amon, that he's going to make my client's life so miserable that he's just going to quit. He isolated him from other employees. He made him do jobs alone, where typically the employees would work together. He scrutinized his work more harshly than other employees. So it was kind of a steady three months, if you will, of harassing hostile conduct. And you lay that out nicely in the brief as far as what the co-employees said and that he had been odious to him even. There are a number of that they thought that Mr. Brown treated him worse after he came back from his injury. But here's my question. The recorded, the secretly recorded conversation with Mr. Brown, which 20 plus pages of transcript in the record, you cite the part where he says, well, this frustrated, Mr. Brown that is, frustrated about this back or whatever, the injury. But the way I read that, it's not you took days off and I'm mad about that or you fell down on the ice, you slipped on the ice and I'm mad about that. Instead, it's what his concern, what his anger stems from is that Mr. Mestis had not come in and done some things around the shop that he could have done because he was fit enough to be seen at the mall and to be out. He wasn't bedridden. That's not based on national origin. That's based on a supervisor's view that someone should be doing everything they can, even if they've fallen and injured themselves. If that is a correct reading, if that's the way that you should read that transcript, do you have a claim? And if so, how? I'm sorry, I'm not sure because it was legitimate for the supervisor to question why he didn't come back in and do like. That it wasn't based on national origin. Mr. Brown, in other words, what the transcript, what I would expect you to do would be show a transcript that says, I can't stand people who have Mexican heritage or something like that, or that's the last time that I ever hire someone with Mexican heritage because of all these awful reasons. But that's not what this transcript shows. It shows that he's concerned not about national origin, but that this employee should have been in, doing everything he could. He wasn't bedridden. And that doesn't go to Title VII, so far as I can tell. No, and I didn't mean it to go to Title VII. I meant it to go to the ADA claim. Or the ADA claim. Yeah, and the ADA claim. And the reason why that transcript was important for this Court was because it was Mr. Mestis' attempt to complain about the hostile work, about the retaliation that he felt he was being subjected to by his supervisor. So that, I believe, that that conversation that he recorded documented his effort, documented his engaging in protected activity, which is complaining about retaliation after he has been. Okay, but you never, your complaint and the summary judgment pleadings are very clear that the only protected activity your claim is based on was his taking the leave itself. Right, but all, yes, but all those other, all that other information is there in the record. All that, all of those, I'm sorry. You're not using that to show another later case of protected activity. It's got to be to show that he was retaliated for the, on the basis of the, retaliated against because of the prior protected activity. Now, what I'm, I'd like to follow up on what Judge Phillips was asking. Is it retaliation for protected activity to retaliate because you didn't try to put in some work when you were on your leave, on your medical leave? Is that, is there anything contrary to the ADA in doing that? If what is, I'll try to put it a different way. I want to be clear about this because it's, I think, an important point that he's raised. If what Brown, the supervisor, was doing was retaliating against Mestis because Mestis didn't even try to work during his medical leave, would that be a violation of the ADA retaliation provisions? No. I don't believe in February when he said, I think you should have come in, it's not my job to motivate you. But I think that Mr. Mestis understood because he was receiving temporary total disability benefits under workers' comp, his medical benefits were being paid under workers' comp. He had been told, and the town had been informed by his doctor, no, you cannot work until further notice. So had he, let's just assume he went into work, he went into the town hall and did something and leaned over and picked something up and re-injured his back. So he could be precluded from any future medical benefits under workers' comp. Okay, so that's his reason for not coming in. Yeah. But if Brown improperly, say, did retaliate, did treat him hostilely, the question, as I understood it from Judge Phillips, and if that wasn't his question, it's become my question, is if what that conversation, that recorded conversation shows, is that Brown was hostile toward Mestis because Brown was frustrated that Mestis didn't come into work while he was on leave, to do some work while he was on leave, then is that retaliation against protected activity? That treating him hostilely because he didn't come in, is that barred by the ADA? I think it is, Your Honor. Oh, okay. I thought a minute ago you said it wasn't. Well, if I did, I'm confused, and it wouldn't be the first time in my life. But I do think it is retaliation for someone who's on protected leave who has given a specific time that, you know, they have outlined a definite time when they cannot work. So he said from the end of November to mid-January was a specific time when he would be back to work, and he was. I think for his supervisor to chastise him for not coming in when he had indicated, this is the time that my doctor has certified that I have to be off of work, I do think it's retaliatory. I do think it would deter somebody from trying to engage in protected activity, particularly when they're on medical leave and receiving treatment for that injury. So, yes, I do think it is a form of retaliation for taking medical leave to recover from an injury and then being chastised that while you're on that medical leave and your doctor has certified that you should not return to work, to chastise the employee for not returning to work when his own physician has told him, don't return to work. Hadn't Mr. Mestis volunteered to work at the town hall as opposed in public works? That sounds, was that contrary to his doctor's advice? I don't know. I don't think the record is clear on the sequence of exactly when he had that conversation, and it isn't in the record, but I believe what happened is he went to his doctor, he turned in the form at town hall, he came to talk to his supervisor, he offered to do something at the town hall that was light duty and was told by his supervisor you don't work for the town hall. But I don't think the record is clear on the precise sequence, if he offered that day, but I do think he offered after he knew that he couldn't return to work in that job as a garbage truck driver. I'll just briefly touch on my Title VII claim. I don't have that much time for rebuttal. On the Title VII hostile work environment claim, I agree, Judge Phillips, that the recorded conversation doesn't document racial hostility, but your cases have said over and over again that the pervasiveness inquiry is not, we're not here counting the times, but you do count the times. This Court over and over again counts the number of times, and the number of times that someone has been subjected to racially charged jokes, insults. Herrera, it was five times in four years. Others, it was 12 times in 14 months. The point is, here it was a mixture of very hostile, harsh treatment, him being targeted after taking protected leave, and a mixture of jokes and frequently referring to subordinates as stupid beaners, or to my own client as a beaner, and those are very harsh racial epithets that are insulting and demeaning and actionable under Title VII. Thank you. Thank you. May it please the Court. Counsel? My name is Tom Thompson, and I represent the town of Evansville in this matter. Evansville is a small Wyoming municipality located outside of Casper, Wyoming, and the appellant's amended complaint in this matter set forth three causes of action. The first cause of action was discrimination based on national origin, hostile work environment based upon disability and violation of the ADA, which does not appear to be challenged or before the Court in regards to the District Court's order granting summary judgment on that claim, and retaliation in employment for taking protected medical leave for a disability. The appellant has changed their argument in regards to the ADA claim from one which was based upon a record of disability, which relates to Mr. Mestiz taking off time as a result of his injury, to one now in which Mr. Mestiz argues to the Court that he had a reasonable good faith belief that, in fact, he was disabled. The facts in this case are significant for this Court to hear. Mestiz was employed with Evansville on September 12, 2012, and he was employed as a sanitation truck driver, although he had other responsibilities in his capacity as an employee. He injured his back on November 26, 2012, and he filed a work comp claim in which he was found to have a work-related injury. He was off of work until January 14, 2013, when he was actually returned to work by his doctor, Dr. Yackel, who indicated that he could return without any restrictions or limitations whatsoever. In fact, the note that is part of the record in this case from Dr. Yackel indicates that his prognosis was rated as excellent at the time that he returned to work on January 14. When he came back to work, he came back without any restrictions or limitations whatsoever. He had no adverse employment action taken against him when he returned to work. May I ask where you're headed? It's not clear to me how this is relevant to the retaliation claim. Yes, Your Honor. In regards to the retaliation claim, and specifically you're speaking of the ADA claim. Yes, I'm sorry, I should. Your Honor, in regards to the ADA claim, the appellant now alleges and asserts to this court that the appellant believed or had a reasonable good faith belief that he was disabled. And that is contrary to what the evidence is in this case. But that's for retaliation claim. He could be totally able. So I don't see if the claim is that after he got his leave that he was retaliated against. And if he's fully recovered and not disabled at all after he recovers, but they retaliate against him for earlier protected activity, he has that claim whether he's disabled or not. Well, the appellant asserts, Your Honor, that that medical leave that was taken from November until January was in fact protected activity under the ADA. And did you challenge that in your brief? We did. Well, we challenged it at the district court level, Your Honor. But you haven't raised that issue on appeal, have you? Your Honor, we have. I believe that it has been raised on appeal. First of all, we've argued that there has been forfeiture in regards to that specific portion of the ADA claim because that was never brought before the district court when the summary judgment motion was opposed by the appellant. Are you talking about reasonable belief of disability when you say that? Yes, Your Honor. All right. So you moved for summary judgment. Correct. Was one of the arguments that he had not engaged in protected activity because he was not disabled at the time? There certainly... I'm sorry, Your Honor, I meant I didn't... I apologize. Was that one of the grounds you raised for getting summary judgment? The summary judgment motion, Your Honor, was based upon a couple of different arguments. But one of them was that he was... When Mr. Mestiz made his claim for social security disability, that he was disabled one day prior to the date of his termination from employment. That has nothing to do with whether he engaged in protected activity when he sought medical leave. Correct, Your Honor. There were questions from the district court judge in regards to whether or not that leave was protected activity. And the argument was it was not because there was no engagement from the appellant with the town of Evansville in regards to I'm taking this leave pursuant to the ADA because I have this disability. That never occurred. And certainly the Cleveland case suggests that that conversation has to, in fact, happen. With those terms, Mr. Mestiz, the garbage truck driver, is supposed to come in and say ADA and reasonable accommodation and all of that? Isn't it all implied? I slipped on the ice, I'm hurt, I can't work, the doctor says that I need some time off, will you please allow this? Yes. According to the Cleveland case, it is not implied, Your Honor. That conversation and notification to the employer has to happen. Furthermore, Mr. Mestiz did not, at least by one account, and depending on which argument you're following that the appellant is making, Mr. Mestiz was not disabled. In his EEOC filing, he asserted that he was a qualified individual that could perform the essential functions of his job. So depending on whether or not you take the argument from the appellant that he had a reasonable good faith belief that he was disabled, or the filings that he made in this case that set forth facts which would suggest that he could perform these functions of this job. And the other important part of the facts in this case, Mr. Mestiz, when he returned to work in January of 2013, he never brought back any other doctor's note or medical record or anything which would inform the employer that he was having problems with his back. Yeah, but I'm extremely confused at this point. Because whether he was able or not when he returned to work in January is totally irrelevant to the retaliation claim as far as I can see. You don't have to be a disabled person to bring a retaliation claim. But he still has to have a reasonable good faith belief. In what? At what time? At any time, Your Honor, from the time that he returned to work. No, no he doesn't. The reasonable good faith belief relates to whether it was protected activity. And if you make a complaint of discrimination against you because of your disability, then that complaint has to be a reasonable good faith belief for you to be able to then complain that you retaliated against for making that complaint. But his abilities at the time of the retaliation are irrelevant to that claim. The retaliation statute says nothing about having to be a qualified individual. Anybody can bring a retaliation claim. Your Honor, my understanding is that when the plaintiff originally brought the complaint in this case and what was argued at the district court, there were two different arguments made under the ADA. One was discrimination, which is not being argued on appeal here. And that requires showing you're a disabled person. Correct, Your Honor. And the second was in regards to retaliation. And part of the requirements under the retaliation is that Mr. Mestiz engaged in a protected activity. And the argument to the court is that, and I believe the argument made by appellants, is that that medical leave from that period of time from November to January was, in fact, the protected activity that they're using as they're showing that this fits a retaliation claim. And I'm arguing to the court that that was not a protected activity. But I think I get that. I thought that's what you were saying here, but I didn't see that being argued in the briefs. I believe it was, Your Honor. I believe that there was. Perhaps I missed that. There was argument that it was not a protected activity under the ADA because there was, and I believe Judge Friedenthal even had that discussion with plaintiff's counsel or with appellant, was that how could that possibly be protected activity under the ADA when there was certainly no discussion with the employer whatsoever in regards to the employee's intent to assert some sort of claim under the ADA or that that was protected activity under the ADA. That's a different issue. That's a different issue. Can I take you to the question that we asked Ms. Hayes, which is, and the second time that she answered it and the first time I understood her to answer it differently too, but the second time she said, if this were protected activity and he returns, certainly he is treated poorly by Mr. Brown. I think the district court found that and there's all kinds of testimony about how. If the mistreatment or different treatment was based on his having not come into work, in other words, his having fully used his time off that he was given after the doctor report and all of that, why isn't that good enough for him to prevail? Because, Your Honor, part of that retaliation claim, the plaintiff has the burden of showing and demonstrating to the court the causation requirement, which is the third element of that claim. Well, she gave his transcript and in that transcript, Mr. Brown is saying, I'm still frustrated. You could have come in here. You were seen at the mall. And that's what leads me to think that's what was motivating him. And so it's directly tied to the time that he was gone on, dare I say, a disability. And the district court found that there was no evidence which would support that causal connection between his protected activity if, in fact, Pelley would concede to that point, that that leave was protected activity in the actual termination of employment in April. And so plaintiff is required to prove each and every element of that retaliation claim. And there was simply no evidence in the case which would suggest that that was the reason for termination. Well, this seems really the point that I'm trying to make is really direct, which is he's hired. He does suitably well. He's injured. He comes back. He's treated poorly. There's certainly plenty of evidence of that. And the reason is stated right out of Mr. Brown's mouth on the recording. Because you didn't come in here, you could have come in here. And so why? What's the missing link? You say no causation. He just said why. Well, I don't believe that the employer trying to motivate the employee to be working when he has an injury where he might be able to work, such as at town hall or in the shop, is actionable under the ADA. I don't believe that that statement alone by Mr. Brown during this secretive recording rises to the level of an actionable claim under the ADA. And I further believe that the evidence in this case is very clear that there was no showing that the back injury that he sustained and which he was released for and returned to work without any limitations or restriction was the cause for his termination. And I see I'm out of time, and I have not had the ability to address the Title VII issue. Can you give me three minutes? Yes, Your Honor. Okay. Your Honor, in regards to the Title VII claim, we have a number of different documents in this case. Very quickly, the EEOC filing that Mr. Mestez filed under oath with his charge of discrimination, indicating that on two different occasions after he had returned to work that Mr. Brown used derogatory comments about him concerning him being a Hispanic. We have the request for admissions also under oath, subject to the penalty of perjury, where Mr. Mestez states that it happened on three different occasions. The third incident occurring when he asked to go home to get a snow plow or snow blower for purposes of shoveling the sidewalk at Town Hall. And then in the interrogatories, we have Mr. Mestez indicating that now it happened on six occasions. And Judge Friedenthal, the district court judge, considered not only those documents and those assertions by Mr. Mestez, she also considered the snippets from the different deposition testimonies concerning what Mr. Brown said when he said it in front of different employees. And given all of that, the court found that, and first of all I'd like to assert under Cleveland, that a plaintiff or the appellant in this case cannot simply contradict sworn testimony that was previously given to create an issue of material fact, which certainly seemed the direction that this case was moving based upon the progression of the EEOC filing, the interrogatories, and request for admissions. But furthermore, the judge noted, the district court judge noted, that Mr. Mestez never took any formal action, never spoke to a supervisor of Mr. Brown's, never went to Town Hall, never filed a grievance, never filed an informal complaint. I thought probationary employees couldn't file grievances. I don't believe there's anything in the employee manual which says they can't file a grievance, Your Honor. I think you give certain rights to non-probationary employees or procedures, but certainly Mr. Mestez was free to go talk to whoever he wanted to. And there was no prohibition in the employee manual regarding that. Your time's expired. Thank you, Your Honor. Any further questions? Thank you. You have, you used all your time, but I gave him an extra three minutes, so if you want, you don't have to use it. I don't want to spend too much more time, but I will just say that your cases have said over and over again, and I said this in my initial pitch here, that the hostile work environment is the environment. Mr. Mestez has not changed his testimony. He was deposed. His entire deposition transcript, as well as the entire deposition transcript of co-employees who also heard offensive jokes, who heard his supervisor refer to him as a stupid beaner, another co-employee who was called a beaner, who was later apologized to. I mean, it is the environment, and the environment was racially charged with both racially hostile racial epithets, as well as other behavior that was directed toward Mr. Mestez. And at the summary judgment stage, it's all reasonable inferences are to be given to the non-moving party. That was Mr. Mestez, and I do not believe the district court gave him those. Does it matter that Mr. Brown made derogatory comments about the French to Mr. Iman, who shrugged it off? I won't say laughed it off, but I'm not sure he didn't. I think all of those employees were trying to get along with Mr. Brown. Does it matter that there were racially charged comments about the French? Yes, it absolutely matters. It's a hostile work environment to anybody who is not, you know, your Anglo-American white employee. So, yes, it's an environment where racially charged comments are tolerated and encouraged. And that's, for my client, actionable under Title VII. Thank you. Thank you. Thank you, counsel. Case submitted. Counselor excused. We'll be in recess until 9 a.m. tomorrow morning.